No. 19-94C
(Judge Campbell-Smith)

---

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

PLAINTIFF NO. 1, *et al.*,

Plaintiffs,

v.

UNITED STATES,

Defendant.

---

## DEFENDANT'S MOTION TO DISMISS

---

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

REGINALD T. BLADES, JR.
Assistant Director

ERIN K. MURDOCK-PARK
ANN C. MOTTO
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel:   (202) 616-3753
Fax:  (202) 514-8624

Dated: June 3, 2019                    Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ..................................................................................................iii

STATEMENT OF THE ISSUE...........................................................................................1

STATEMENT OF THE CASE............................................................................................2

     I.     Statutory Background ........................................................................................2

          A.     The Anti-Deficiency Act...........................................................................2

          B.     The Fair Labor Standards Act....................................................................5

     II.     Factual Background ..........................................................................................6

SUMMARY OF THE ARGUMENT ..................................................................................7

STANDARD OF REVIEW ................................................................................................9

ARGUMENT .....................................................................................................................9

     The Federal Government Fully Complied With Its Statutory Payment
     Obligations .......................................................................................................9

          A.     The Government Paid Plaintiffs In Accordance With Its
                    Anti-Deficiency Act Obligations ...............................................................9

          B.     The Government Does Not Violate The FLSA By Complying With
                    The Anti-Deficiency Act...........................................................................11

          C.     Even Assuming That Plaintiffs Have A Viable Claim, An Award Of
                    Relief Would Not Constitute An Act Of Sound Discretion Under
                    29 U.S.C. § 260.......................................................................................16

CONCLUSION...................................................................................................................17

# TABLE OF AUTHORITIES

**CASES**                                                               **PAGE(S)**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................ 9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................ 9

*Biggs v. Wilson,*
   1 F.3d 1537 (9th Cir. 1993) ........................................................................... 15

*Bradley v. United States,*
   98 U.S. 104 (1878) ........................................................................................... 3

*Calderon v. Witvoet,*
   999 F.2d 1101 (7th Cir. 1993) ....................................................................... 14

*Cincinnati Soap Co. v. United States,*
   301 U.S. 308 (1937) ......................................................................................... 2

*Cloer v. Sec'y of Health & Human Servs.,*
   675 F.3d 1358 (Fed. Cir. 2012) ..................................................................... 15

*Erickson v. U.S. Postal Serv.,*
   759 F.3d 1341 (Fed. Cir. 2014) ..................................................................... 15

*FAA v. Cooper,*
   566 U.S. 284 (2012) ................................................................................. 14, 15

*Hardy et al. v. United States et al.,*
   No. 19-cv-51 (D.D.C. Jan. 9, 2019) .............................................................. 10

*Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States,*
   48 F.3d 1166 (Fed. Cir. 1995) ................................................................. 11, 13

*Lane v. Pena,*
   518 U.S. 187 (1996) ....................................................................................... 13

*Martin v. United States,*
   130 Fed. Cl. 578 (2017) ...................................................................... 8, 15, 16

*National Treasury Employees Union v. United States* (*NTEU*),
   No. 19-cv-50 (D.D.C. Jan. 9, 2019) .............................................................. 10

*Office of Pers. Mgmt. (OPM) v. Richmond,*
   496 U.S. 414 (1990) ................................................................................... 2, 13

*Rogers v. City of Troy, N.Y.*,
   148 F.3d 52 (2d Cir. 1998)..................................................................... 14

*Sebelius v. Cloer*,
   569 U.S. 369 (2013)............................................................................... 15

*Sutton v. United States*,
   256 U.S. 575 (1921)................................................................................. 3

*Trusted Integration, Inc. v. United States*,
   659 F.3d 1159 (Fed. Cir. 2011)............................................................ 10

*Wilder's Case*,
   16 Ct. Cl. 528 (1880) ............................................................................ 12

**<u>STATUTES</u>**

5 U.S.C. § 5545a ............................................................................................ 10

28 U.S.C. § 1500 ........................................................................................... 10

29 U.S.C. § 206(a) ........................................................................................... 5

29 U.S.C. § 207(a)(1) ...................................................................................... 5

29 U.S.C. § 207(k) ........................................................................................... 5

29 U.S.C. § 213................................................................................................ 5

29 U.S.C. § 216(b) ....................................................................................... 2, 6

29 U.S.C. § 260 .......................................................................................... 6, 16

29 U.S.C. §§ 201-19 ........................................................................................ 5

31 U.S.C. § 1341 ......................................................................................... 2, 4

31 U.S.C. § 1341(a) ...................................................................................... 10

31 U.S.C. § 1341(a)(1) ............................................................................... 3, 12

31 U.S.C. § 1341(c)(1)(D) .............................................................................. 4

31 U.S.C. § 1341(c)(2)................................................................. 1, 2, 5, 10, 11

31 U.S.C. § 1342.................................................................................... 3, 4, 12

31 U.S.C. § 1350 .................................................................................................... 3, 10, 12

**RULE**
RCFC 12(b)(6) .......................................................................................................... 9

**CONSTITUTION, STATUTES, AND REGULATIONS**

U.S. Const., art. I, § 9 ................................................................................................2

29 C.F.R. § 778.106 ............................................................................................... 14

**OTHER AUTHORITY**

Cong. Research Serv., *Fed. Budget, Accounting, & Fin. Mgmt. Laws: Summaries of Selected Provisions* (1996) .......................................................................3
The Government Employee Fair Treatment Act of 2019,
  Pub. L. No. 116-1, 133 Stat. 3 ...............................................................1, 4, 8, 16

Further Additional Continuing Appropriations Act of 2019,
  Pub. L. No. 116-5, 133 Stat. 11 ..............................................................1, 5, 6, 16

Government Operations In The Event Of A Lapse In Appropriations, Supp. Op. O.L.C.
  (1995), 1995 WL 17216091 ............................................................................4

*Office of Pers. Mgmt., Guidance for Shutdown Furloughs* (Sept. 2015) .......................................3

OPM Mem. M-18-05, Planning for Agency Ops. During a Potential Lapse in Appropriations
  (Jan. 19, 2018) ..................................................................................................4

Thomas Nicola, Cong. Research Serv., *Background Info. on the Antideficiency Act & Examples of Violations* (1995) ..............................................................................3

U.S. Gov't Accountability Off. (GAO), GAO-06-382SP, *Principles of Fed. Appropriations Law* (3d ed. 2006) ..............................................................................................3

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PLAINTIFF NO. 1, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 19-94C |
| | ) | (Judge Campbell-Smith) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss plaintiffs' amended complaint for failure to state a claim upon which relief may be granted.

## STATEMENT OF THE ISSUE

Plaintiffs allege that they are federal employees who were excepted to perform work arising from "emergencies involving the safety of human life or the protection of property" during the lapse in appropriations that occurred between December 22, 2018, and January 25, 2019. The Anti-Deficiency Act prohibited federal officials from compensating plaintiffs or any other federal workers during the appropriations lapse on pain of criminal penalties, including fines and imprisonment. Congress amended the Anti-Deficiency Act to specify when compensation should be made, directing that employees "shall be paid for such work . . . at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse." 31 U.S.C. § 1341(c)(2); *see* Government Employee Fair Treatment Act of 2019, Pub. L. No. 116-1, 133 Stat. 3; Further Additional Continuing Appropriations Act, 2019, Pub. L. No. 116-5, 133 Stat. 10.

Consistent with this directive, the government paid plaintiffs for the work they performed "at the earliest date possible after the lapse in appropriations end[ed]." *See* 31 U.S.C. § 1341(c)(2). Plaintiffs' suit urges that the United States is nevertheless liable for liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 216(b), because federal officials did not violate a criminal prohibition to provide plaintiffs with compensation on their regularly scheduled paydays during the lapse. On this basis, plaintiffs claim that they are entitled to damages equal to the amount that they have already received for overtime wages and minimum wages pursuant to the Fair Labor Standards Act.

The question presented is whether plaintiffs have stated a claim for liquidated damages under the Fair Labor Standards Act notwithstanding the provisions of the Anti-Deficiency Act.

## STATEMENT OF THE CASE

### I.    Statutory Background

#### A.    The Anti-Deficiency Act

Congress enacted the Anti-Deficiency Act, 31 U.S.C. §§ 1341-42, to vindicate its constitutional authority over appropriations. The Appropriations Clause provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const., art. I, § 9, cl. 7. This clause provides a "straightforward and explicit command," and "means simply that no money can be paid out of the Treasury unless it has been appropriated by an Act of Congress." *Office of Pers. Mgmt. (OPM) v. Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)). Absent some other unrestricted source of budgetary authority, a federal agency's power to "make or authorize" payments from the Treasury expires upon exhaustion of the relevant appropriations. *See, e.g.*,

*Sutton v. United States*, 256 U.S. 575, 579-80 (1921); *Bradley v. United States*, 98 U.S. 104, 113-114, 117 (1878).

Until the late nineteenth century, federal agencies often "incurred obligations in excess of or in advance of appropriations and then returned to Congress for appropriations to cover them." Thomas Nicola, Cong. Research Serv., *Background Info. on the Antideficiency Act & Examples of Violations* 1 (1995); *see* U.S. Gov't Accountability Off. (GAO), GAO-06-382SP, *Principles of Fed. Appropriations Law* 6-34 (3d ed. 2006); Cong. Research Serv., 96-626 GOV, *Fed. Budget, Accounting, & Fin. Mgmt. Laws: Summaries of Selected Provisions* 3 (1996).  In 1870, Congress enacted the Anti-Deficiency Act to put an end to this practice.

The Act prohibits federal officers or employees from "mak[ing] or authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation."  31 U.S.C. § 1341(a)(1).  The Act separately prohibits federal officers or employees from "accept[ing] voluntary services" and from "employ[ing] personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property."  *Id.* § 1342.

The knowing and willful violation of these prohibitions is a felony punishable by a fine of "not more than $5,000, imprison[ment] for not more than 2 years, or both."  31 U.S.C. § 1350. Federal employees who violate these prohibitions "shall" also "be subject to appropriate administrative discipline including, when circumstances warrant, suspension from duty without pay or removal from office."  *Id.* § 1349(a).

The Anti-Deficiency Act substantially restricts the federal government's operations in the event of a lapse of appropriations.  In the absence of an appropriation that funds their pay, federal employees are generally prohibited from working, even on a voluntary basis.  31 U.S.C.

§ 1342.  This prohibition is subject to narrow exceptions, including "emergencies involving the safety of human life or the protection of property."  *Id.*  Federal employees who perform such work are considered "excepted" employees.  *See OPM*, *Guidance for Shutdown Furloughs* 1 (Sept. 2015) (stating that the term "excepted" refers to "employees who are funded through annual appropriations who are nonetheless excepted from the furlough because they are performing work that, by law, may continue to be performed during a lapse in appropriations."); 31 U.S.C. § 1341(c)(1)(D) (defining "excepted employee").[1]

The terms of the Anti-Deficiency Act establish that excepted employees cannot be paid for their work while the lapse in appropriations persists.  Thus, "once an appropriation is exhausted, the making of any further payments, apart from using expired balances to liquidate or make adjustments to valid obligations recorded against that appropriation, violates 31 U.S.C. § 1341."  *Principles of Fed. Appropriations Law* at 6-41.

Congress clarified these features of the Anti-Deficiency Act by amending the Act during the most recent lapse in appropriations to specify the date on which compensation should be made.  The Government Employee Fair Treatment Act of 2019, Pub. L. No. 116-1, 133 Stat. 3, provides that "each excepted employee who is required to perform work during a . . . lapse in

---

[1] To help agencies determine which activities are "excepted" from the Anti-Deficiency Act, the Department of Justice (DOJ) has published several opinions on the subject.  *See, e.g.*, Government Operations In The Event Of A Lapse In Appropriations, Supp. Op. O.L.C. (1995), 1995 WL 17216091.  Based on the advice contained within these DOJ opinions, the Office of Management and Budget (OMB) issues guidance to agencies advising agencies to prepare for possible lapses in appropriations and to develop "contingency plans" setting forth what agency activities will continue.  Most recently, in January 2018, OMB issued a memorandum to the heads of all agencies advising them to review their contingency plans, and to "ensure that only those activities that are 'excepted' pursuant to applicable legal requirements would continue to be performed during a lapse in the appropriation for those activities[.]"  OMB Mem. M-18-05, Planning For Agency Operations During A Potential Lapse In Appropriations, at 1 (Jan. 19, 2018).

appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates."  In the continuing resolution that ended the most recent lapse in appropriations, Congress further clarified that compensation for excepted work may only be paid after the enactment of appropriations legislation ending the lapse.  *See* Further Additional Continuing Appropriations Act, 2019, Pub. L. No. 116-5, 133 Stat. 11.

As a result of these amendments, the Anti-Deficiency Act now expressly provides that "each excepted employee who is required to perform work during a covered lapse in appropriations" shall be compensated "at the earliest day possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse."  31 U.S.C. § 1341(c)(2).

## B.    The Fair Labor Standards Act

Congress enacted the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, to establish nationally uniform minimum-wage and overtime-wage requirements for certain employees.  *See* 29 U.S.C. § 213 (setting forth categories of exempted employees).  The FLSA assures all non-exempt employees a minimum wage for every "workweek."  29 U.S.C. § 206(a).  This minimum wage is currently set at $7.25 per hour.  *Id.*  The FLSA also requires employers to compensate their employees at "one and one-half times the regular rate at which [they are] employed" if the employees' workweek exceeds a 40-hour threshold.  *Id.* § 207(a)(1).  The FLSA does not specify a date on which compensation must be made.[2]

---

[2] Certain exceptions apply to the 40-hour workweek threshold, *see, e.g.*, 29 U.S.C. § 207(k), which are not pertinent for purposes of this motion to dismiss; regardless of the number of hours required to trigger the FLSA's minimum wage or overtime wage provisions, plaintiffs' claims still fail.

Employers that violate the FLSA's minimum-wage or overtime-wage requirements are "liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). Employers may also be liable "in an additional equal amount as liquidated damages." *Id.* Even when an employer is found to have violated the FLSA, however, an award of liquidated damages is discretionary if an employer can "show[] to the satisfaction of [a] court that the act or omission giving rise" to unpaid compensation "was in good faith, and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the" FLSA. *Id.* § 260.

## II.     Factual Background

At the end of the day on December 21, 2018, the appropriations act that had been funding several federal government agencies lapsed. The lapse ended on January 25, 2019, when Congress enacted a continuing resolution restoring appropriations to the affected agencies. *See* Pub. L. No. 116-5. Agencies affected by the lapse in appropriations included, but were not limited to, the U.S. Department of Justice and sub-agencies the Bureau of Prisons, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the Federal Bureau of Investigation, and the Drug Enforcement Agency; the U.S. Department of Homeland Security and sub-agencies the Federal Emergency Management Agency, the U.S. Customs and Border Protection, the U.S. Immigration and Customs Enforcement, the U.S. Secret Service, the Transportation Security Administration, and the U.S. Coast Guard; the U.S. Department of Interior and sub-agencies the National Park Service and the Bureau of Indian Affairs; the U.S. Department of Commerce and sub-agencies the National Institute of Standards and Technology, the National Weather Service, and the National Oceanic and Atmospheric Administration; the U.S. Department of Agriculture and sub-agencies the Food Safety and Inspection Service and the U.S. Forest Service; the U.S.

Department of Health and Human Services and sub-agency the Indian Health Service; the U.S. Agency for Global Media and sub-agency Voice of America; and the Federal Aviation Administration.

Plaintiffs are employees of agencies affected by the lapse in appropriations.  On January 17, 2019, plaintiffs filed this FLSA collective action.  Their complaint alleged that the federal government had required them to perform excepted work but had not paid them for that work on their regularly scheduled pay dates.  Dkt. No. 1 ¶ 1.  Count one, the only count in the second amended complaint, alleges that the federal government's failure to pay plaintiffs FLSA overtime and minimum wages on their regularly scheduled paydays for work performed during the recent lapse in appropriations violated the FLSA.  Dkt. No. 40 (2nd Am. Compl.) ¶ 17-21. Plaintiffs seek certification of a collective action on behalf of themselves and all other similarly situated federal employees who were not paid in accordance with the FLSA for work performed during the lapse in appropriations.  *See id.* ¶ 3.  They seek liquidated damages to total the amount of any FLSA overtime wages and minimum wages that they were entitled to receive on their regularly scheduled paydays, plus attorney fees and costs.  *Id.* ¶ 6.

## **SUMMARY OF THE ARGUMENT**

It is not disputed that federal officials in plaintiffs' agencies would have violated the criminal prohibitions of the Anti-Deficiency Act if they had paid employees during the lapse in appropriations.  It is also beyond dispute that Congress amended the Anti-Deficiency Act to specifically address the date on which employees should be paid.  The legislation provides that "each excepted employee who is required to perform work during a . . . lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible

after the lapse in appropriations ends, regardless of scheduled pay dates."  Government Employee Fair Treatment Act of 2019, Pub. L. No. 116-1, 133 Stat. 3.

Consistent with Congress's directive, plaintiffs were paid at the earliest possible date after the lapse in appropriations ended.  Plaintiffs nevertheless urge that they are entitled under the FLSA to liquidated damages for overtime wages and minimum wages, on the ground that they were not compensated on their regular pay dates.  That argument asks the Court to disregard Congress's express directives in the Anti-Deficiency Act.  The Anti-Deficiency Act and the FLSA are both federal laws.  When Congress criminalized payments during an appropriations lapse, it plainly precluded payments on the schedule plaintiffs assert is required by the FLSA.  Federal officials who comply with that criminal prohibition do not violate the FLSA, and Congress did not create a scheme under which compliance with the Anti-Deficiency Act would result in additional compensation as damages to federal employees.

Plaintiffs' argument is particularly anomalous because it disregards fundamental principles of sovereign immunity which require that the scope of a waiver be stated clearly in the statutory text.  The Anti-Deficiency Act would negate any claim of an unambiguous waiver even if the FLSA clearly provided that failure to make compensation on a regularly scheduled pay date would result in liquidated damages.  But the FLSA contains no such provision.  Several courts have implied a "prompt payment" requirement in their application of the FLSA to other employment contexts.  But a court may not imply a right to damages against the United States that appears nowhere in the statute.

This Court in *Martin v. United States* concluded that plaintiffs situated similarly to plaintiffs here could recover liquidated damages under the FLSA, and we respectfully disagree with that holding.  But any doubt as to the obligations imposed on the United States by Congress

8

was removed by the 2019 legislation, which unambiguously provides that excepted employees "shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates."  That enactment specifically directs federal officials when to make payment.  Making payment on the date Congress prescribed does not violate federal law.  And, at an absolute minimum, there is no ground for concluding that Congress unambiguously subjected the United States to damages where federal officials have acted in precisely the manner dictated by Congress itself.

## STANDARD OF REVIEW

Pursuant to RCFC 12(b)(6), a complaint that "fail[s] to state a claim upon which relief can be granted" shall be dismissed.  To survive dismissal under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

**The Federal Government Fully Complied With Its Statutory Payment Obligations.**

**A.      The Government Paid Plaintiffs In Accordance With Its Anti-Deficiency Act Obligations.**

The Anti-Deficiency Act provides that "each excepted employee who is required to perform work during a . . . lapse in appropriations shall be paid for such work, at the employee's

standard rate of pay." 31 U.S.C. § 1341(c)(2).  The Act also makes clear when such payment

shall be made.  Federal officials may not compensate employees during a lapse in appropriations

and are subject to criminal prosecution if they do so.  *Id.* §§ 1341(a), 1350.  Congress has

provided, instead, the government must compensate employees "at the earliest date possible after

the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment

of appropriations Acts ending the lapse."  *See id.* § 1341(c)(2).

Plaintiffs are federal employees who performed excepted work during the most recent

lapse in appropriations.[3]  They do not dispute that federal officials were statutorily barred from

compensating them for that work while the lapse in appropriations persisted.  Plaintiffs also do

not dispute that, once appropriations were restored pursuant to "the enactment of [an]

appropriations Act[] ending the lapse," the government fully compensated plaintiffs "at the

---

[3] Some of the named plaintiffs appear to be investigators or otherwise in intelligence-related occupations who are excluded from the FLSA.  *See, e.g.,* 2nd Am. Compl. ¶ 8.  To the extent that plaintiffs (1) claim any FLSA violation for failing to pay FLSA minimum wages or overtime wages to FLSA-exempt employees, or (2) welcome FLSA-exempt employees to join their collective, those claims must be dismissed.  *See, e.g.* 5 U.S.C. § 5545a (explaining that criminal investigators are exempted from the FLSA pursuant to 29 U.S.C. § 213(a)(16)); *Jones v. United States*, 88 Fed. Cl. 789, 792 (2009) (holding that the Transportation Security Administration is exempt from FLSA overtime compensation requirements for airport security screeners).  In addition, three cases based upon the same set of operative facts as at issue in this case were filed in the United States District Court for the District of Columbia, two of which at the time of the filing of this motion remained pending: (1) *National Treasury Employees Union v. United States* (*NTEU*), No. 19-cv-50 (D.D.C. Jan. 9, 2019); and (2) *Hardy v. United States*, No. 19-cv-51 (D.D.C. Jan. 9, 2019).  Both district court cases raise claims regarding payment of wages during the lapse in appropriations, and are thus based upon the same operative facts as this case.  *Compare, e.g., NTEU*, No. 19-cv-50, Dkt. No. 1 ¶¶ 4, 7-8 *and Hardy*, No. 19-cv-51, Dkt. No 1 *with* 2nd Am. Compl. ¶¶ 1-2, 6.  To the extent that plaintiffs in either of the district court cases overlap with the proposed collective in this case, *i.e.* FLSA non-exempt, "excepted" federal employees who were not paid on their regularly scheduled payday during the lapse in appropriations, the Court is barred under 28 U.S.C. § 1500 from considering those plaintiffs' claims in this case.  28 U.S.C. § 1500; *see Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1170 (Fed. Cir. 2011).

earliest date possible . . . , regardless of scheduled pay dates."[4]  *See* 31 U.S.C. § 1341(c)(2).

Because the government fully complied with its statutory obligations to plaintiffs, the amended

complaint should be dismissed.

**B.      The Government Does Not Violate The FLSA By Complying With The Anti-
Deficiency Act.**

In the face of unambiguous legislation and the government's compliance with Congress's

dictates, plaintiffs nevertheless urge that they are entitled to liquidated damages equal to the

amount they already received for overtime wages and for minimum wages.  Plaintiffs seek to

derive this entitlement from the FLSA's provisions for minimum wages and overtime pay.  Their

argument relies on case law involving employers other than the federal government, in which the

only relevant federal statute was the FLSA.  The reasoning of those cases cannot be imported

here, where the Court is required to interpret the Anti-Deficiency Act as well as the FLSA, and

to do so consistent with principles of sovereign immunity.

**1.**  The Court must, of course, construe the Anti-Deficiency Act as well as the FLSA.

Indeed, Federal Circuit precedent recognizes that a congressional payment instruction to an

agency must be read in light of the Anti-Deficiency Act.  *See Highland Falls-Fort Montgomery*

*Cent. Sch. Dist. v. United States*, 48 F.3d 1166, 1171 (Fed. Cir. 1995).  In *Highland Falls*,

appropriations were insufficient to provide plaintiff school districts with the full amounts to

which they were entitled under permanent legislation.  The Federal Circuit rejected the claim for

damages, reasoning that, by making *pro rata* reductions in the amounts to which school districts

were entitled, the Secretary of Education had properly harmonized the requirements of the

---

[4] Although plaintiffs assert that they have not received back pay, *see, e.g.,* 2nd Am. Compl.
¶ 4, that claim for relief is now moot because plaintiffs have been paid their full wages, including
their overtime wages and minimum wages, due for their work performed during the lapse in
appropriations.

11

substantive statute, the appropriations statutes, and the requirements of the Anti-Deficiency Act.
*Id.*

Harmonizing the FLSA and Anti-Deficiency Act here leaves no doubt that plaintiffs were entitled to receive compensation on the date specifically prescribed by Congress and not on a date that courts have implied in interpreting the FLSA.

The Anti-Deficiency Act prohibits federal officers and employees from "mak[ing] or authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation," 31 U.S.C. § 1341(a)(1), and makes a knowing and willful violation a felony punishable by a fine of "not more than $5,000, imprison[ment] for not more than 2 years, or both." 31 U.S.C. § 1350. Since its enactment in 1870, the Act has controlled "in every possible way the expenditures and expenses and liabilities of the government." *Wilder's Case*, 16 Ct. Cl. 528, 543 (1880). And under the Act, the government may require employees to perform work arising from "emergencies involving the safety of human life or the protection of property" in the absence of a congressional appropriation, but cannot make payments for that work unless and until Congress provides the necessary appropriation. *See* 31 U.S.C. § 1342. Both the criminal penalties and the "emergency" exception to the prohibition against voluntary services provided under the Anti-Deficiency Act had been in place for over thirty years by the time Congress enacted the FLSA in 1938, and for nearly seventy years by the time Congress extended the FLSA's wage provisions to federal employees in 1974. *See* Act of Mar. 3, 1905, ch. 1484, § 4, 33 Stat. 1257 (codified, as amended, at 31 U.S.C. §§ 1342, 1350).

Plaintiffs' contrary argument rests on the premise that, in enacting the FLSA, Congress altered the application of the Anti-Deficiency Act to payments to federal employees. In

plaintiffs' view, the FLSA directs federal officials to make payments on excepted employees' regularly scheduled pay dates despite the absence of an appropriation and despite the possibility of criminal penalties for officials who made those payments—and then deems the officials' adherence to that criminal prohibition a breach of the government's FLSA obligations. As this lawsuit illustrates, plaintiffs' interpretation of the FLSA would mean that federal employees must not only receive their compensation when a lapse in appropriations ends, but also must receive liquidated damages equal to the amount of their overtime wages and minimum wages. No authority and nothing in common sense supports that contention, which cannot be reconciled with the obligation of courts to reconcile payment instructions to agencies in light of the government's Anti-Deficiency Act obligations. *See Highland Falls*, 48 F.3d at 1171. This Court should decline plaintiffs' invitation to interpret the FLSA in a manner that would undermine the Anti-Deficiency Act and the Appropriations Clause's "fundamental and comprehensive purpose": "to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." *Richmond*, 496 U.S. at 427-28.

2. Plaintiffs' amended complaint would fail to state a claim even apart from the considerations of sovereign immunity that must guide a court's inquiry into the availability of damages against the United States. But those considerations independently confirm that plaintiffs' amended complaint must be dismissed. It is axiomatic that "when it comes to an award of money damages, sovereign immunity places the federal government on an entirely different footing than private parties." *Lane v. Pena*, 518 U.S. 187, 196 (1996). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied," and, as particularly relevant here, "a waiver of the Government's

sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* at 192 (internal citations omitted).

It is thus not sufficient to note that the FLSA contains a waiver of immunity.  It is also necessary to determine whether Congress has waived immunity for the liquidated damages sought here.  In undertaking that inquiry, the Court is guided by the Supreme Court's admonition that "[f]or the same reason that we refuse to enforce a waiver that is not unambiguously expressed in the statute, we also construe any ambiguities in the scope of a waiver in favor of the sovereign."  *FAA v. Cooper*, 566 U.S. 284, 291 (2012).  As the Supreme Court emphasized in *Cooper*, "the scope of Congress' waiver [must] be clearly discernable from the statutory text in light of traditional interpretive tools.  If it is not, then we take the interpretation most favorable to the Government."  *Id*.

For the reasons discussed above, because of the clear command of the Anti-Deficiency Act, plaintiffs' argument would be untenable even if the FLSA unambiguously provided that an employer would be liable for liquidated damages whenever compensation was delayed beyond a regularly scheduled pay date.  But the FLSA contains no such provision; it does not require that employees be paid on their regularly scheduled pay date or make damages available when compensation is not received on a pay date.

As the Court is aware, several courts of appeals have implied a "prompt payment" requirement, while also recognizing that the rule is not inflexible.  *See, e.g.*, *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55-56 (2d Cir. 1998); *Calderon v. Witvoet*, 999 F.2d 1101, 1108 (7th Cir. 1993); *see also* 29 C.F.R. § 778.106.  Whatever the merit of those decisions, a court has no authority to infer a waiver of federal sovereign immunity that is entirely absent from the statutory text—much less do so in the face of a statute that criminalizes the payments that

14

plaintiffs insist were required by law.  *See Erickson v. U.S. Postal Serv.*, 759 F.3d 1341, 1345

(Fed. Cir. 2014) ("A waiver of sovereign immunity 'must be unequivocally expressed in

statutory text,' and '[a]ny ambiguities in the statutory language are to be construed in favor of

immunity'") (quoting *Cooper,* 566 U.S. at 290) (quotation simplified); *see also Cloer v. Sec'y of*

*Health & Human Servs.,* 675 F.3d 1358, 1368 (Fed. Cir. 2012) (same), *aff'd sub nom. Sebelius v.*

*Cloer,* 569 U.S. 369 (2013).

As the Court is also aware, the Ninth Circuit in *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir.

1993), took a rigid view of the implied "prompt payment" requirement in the context of a budget

impasse that delayed payment to California state employees.  Even assuming that the decision

was correct, it has no bearing on the analysis here.  The analysis in *Biggs* involved the

application of only one federal statute, the FLSA.  The Ninth Circuit had no occasion to interpret

the FLSA in conjunction with a second federal statute that specifically addressed the timing of

compensation.  The Ninth Circuit similarly had no occasion to consider whether Congress, in

enacting the FLSA, unambiguously subjected the United States to damages when payments

during an appropriations lapse are barred by the Anti-Deficiency Act.

This Court in *Martin* concluded that plaintiffs similarly situated to plaintiffs here had

stated a claim for liquidated damages, and, as noted, we respectfully disagree with that holding.

Since this Court's decision, however, Congress has specifically addressed the timing of the

government's obligation to provide compensation.  As discussed, the Government Employee

Fair Treatment Act of 2019 provides that "each excepted employee who is required to perform

work during a . . . lapse in appropriations shall be paid for such work, at the employee's standard

rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of

scheduled pay dates."  Pub. L. No. 116-1, 133 Stat. 3.  Congress has thus spoken directly to the

15

question of when compensation should be paid.  There can be no basis for inferring that compensation made in accordance with that explicit directive subjects the United States to liquidated damages.

     **C.**     **Even Assuming That Plaintiffs Have A Viable Claim, An Award of Relief Would Not Constitute An Act Of Sound Discretion Under 29 U.S.C. § 260.**

At an absolute minimum, the conduct of government officials during the lapse in appropriations falls within the scope of 29 U.S.C. § 260, which authorizes a court to award no damages or reduced damages when an employer demonstrates that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938."

This Court reached a different conclusion in *Martin,* and we respectfully disagree with that ruling.  In this case, however, Congress explicitly instructed federal officials as to the correct date on which to pay compensation, and those officials had every objective and subjective reason to believe that they were complying with federal law.  *See* Pub. L. No. 116-1, 133 Stat. 3; *see also* Pub. L. No. 116-5, 133 Stat. 11.

Indeed, we respectfully urge that this was the case even before the 2019 amendment to the Anti-Deficiency Act.  This Court stated in *Martin* that the government could show good faith only if it took "active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them."  *Martin v. United States*, 130 Fed. Cl. 578, 585 (2017) (citation omitted).  But whatever the dictates of the FLSA might be, federal officials knew that they could be imprisoned for making compensation.  They could legally take no steps to comply with a dictate that required payment during a lapse of appropriations.  It is difficult to posit a case in which an employer has better reason to believe it is complying with federal law and in which providing earlier compensation is legally impossible.

16

## **CONCLUSION**

For these reasons, the government respectfully requests that the Court dismiss plaintiffs'

amended complaint for failure to state a claim upon which relief may be granted.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

/s/ Erin K. Murdock-Park
ERIN K. MURDOCK-PARK
ANN C. MOTTO
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel:   (202) 616-3753
Fax:  (202) 514-8624

Dated: June 3, 2019                           Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 3rd day of June, 2019, a copy of the foregoing

"DEFENDANT'S MOTION TO DISMISS" was filed electronically.  This filing was served

electronically to all parties by virtue of the court's electronic filing system.

/s/ Erin K. Murdock-Park
ERIN K. MURDOCK-PARK
