No. 19-94C
(Judge Campbell-Smith)

---

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

PLAINTIFF NO. 1, *et al.*,

Plaintiffs,

v.

UNITED STATES,

Defendant.

---

## DEFENDANT'S MOTION TO DISMISS

---

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

REGINALD T. BLADES, JR.
Assistant Director

ERIN K. MURDOCK-PARK
ANN C. MOTTO
VIJAYA S. SURAMPUDI
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 616-3753
Fax:  (202) 514-8624

Dated: June 4, 2020                Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................iii

STATEMENT OF THE ISSUE.............................................................................................. 1

STATEMENT OF THE CASE............................................................................................... 2

     I.      Statutory Background ................................................................................ 2

          A.     The Anti-Deficiency Act............................................................... 2

          B.     The Fair Labor Standards Act..................................................... 5

     II.     Factual Background ................................................................................... 6

SUMMARY OF THE ARGUMENT ..................................................................................... 8

STANDARD OF REVIEW .................................................................................................... 9

ARGUMENT .......................................................................................................................... 10

     The Federal Government Fully Complied With Its Statutory Payment
     Obligations ............................................................................................................... 10

          A.     The Government Paid Plaintiffs In Accordance With Its
                 Anti-Deficiency Act Obligations .............................................. 10

          B.     The Government Does Not Violate The FLSA By Complying With
                 The Anti-Deficiency Act.......................................................... 11

          C.     Even Assuming That Plaintiffs Have A Viable Claim, An Award Of
                 Relief Would Not Constitute An Act Of Sound Discretion Under
                 29 U.S.C. § 260...................................................................... 19

          D.     Plaintiffs' Claim For Liquidated Damages For Straight Time Pay Must
                 Be Dismissed Because Liquidated Damages Apply To Only Awards Of
                 FLSA Overtime And Minimum Wages…………………………………….20

CONCLUSION...................................................................................................................... 24

# TABLE OF AUTHORITIES

Cases

*Abreu v. United States*,
    948 F.2d 1229 (Fed. Cir. 1991)...................................................................................... 22

*Alamo v. United States*,
    850 F.3d 1349 (Fed. Cir. 2017)...................................................................................... 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................ 9

*Barvinchak v. Indiana Reg'l Med. Ctr.*,
    No. 06-69, 2007 WL 2903911 (W.D. Pa. Sept. 28, 2007)............................................ 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................... 9, 10

*Biggs v. Wilson*,
    1 F.3d 1537 (9th Cir. 1993) .......................................................................................... 17

*Bradley v. United States*,
    98 U.S. 104 (1878).......................................................................................................... 3

*Brooks v. Weinberger*,
    730 F. Supp. 1132 (D.D.C. 1989) ............................................................................ 21, 22

*Calderon v. Witvoet*,
    999 F.2d 1101 (7th Cir. 1993) ...................................................................................... 17

*Cincinnati Soap Co. v. United States*,
    301 U.S. 308 (1937)........................................................................................................ 3

*Cloer v. Sec'y of Health & Human Servs.*,
    675 F.3d 1358 (Fed. Cir. 2012)...................................................................................... 18

*Erickson v. U.S. Postal Serv.*,
    759 F.3d 1341 (Fed. Cir. 2014)...................................................................................... 17

*FAA v. Cooper*,
    566 U.S. 284 (2012)................................................................................................... 15, 17

*Hayes v. Bill Haley & His Comets, Inc.*,
    274 F. Supp. 34 (E.D. Pa. 1967) ................................................................................... 23

*Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States*,
  48 F.3d 1166 (Fed. Cir. 1995) ........................................................................ 12, 14

*Jones v. United States*,
  88 Fed. Cl. 789 (2009) ...................................................................................... 10

*Koelker v. Mayor & City Council of Cumberland (Maryland)*,
  599 F. Supp. 2d 624 (D. Md. 2009) .................................................................... 20

*Lane v. Pena*,
  518 U.S. 187 (1996) .......................................................................................... 15

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
  711 F.3d 106 (2d Cir. 2013) .............................................................................. 20

*Maine Cmty. Health Options v. United States*,
  140 S. Ct. 1308 (2020) .......................................................................... 15, 16, 17

*Martin v. United States*,
  130 Fed. Cl. 578 (2017) .................................................................................... 19

*Monahan v. Cty. of Chesterfield, Va.*,
  95 F.3d 1263 (4th Cir. 1996) ............................................................................ 20

*NTEU v. United States*,
  No. 19-50, 2020 WL 1245048 (D.D.C. Mar. 16, 2020) .................................... 11, 12

*Office of Pers. Mgmt. v. Richmond*,
  496 U.S. 414 (1990) ........................................................................................ 3, 15

*Platek v. Duquesne Club*,
  961 F. Supp. 835 (W.D. Pa. 1995) ...................................................................... 23

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
  132 S. Ct. 2065 (2012) ...................................................................................... 12

*Rogers v. City of Troy, N.Y.*,
  148 F.3d 52 (2d Cir. 1998) ................................................................................ 17

*Sebelius v. Cloer*,
  569 U.S. 369 (2013) .......................................................................................... 18

*Sutton v. United States*,
  256 U.S. 575 (1921) ............................................................................................ 3

*Trusted Integration, Inc. v. United States*,
    659 F.3d 1159 (Fed. Cir. 2011) ................................................................................ 11

*Walling v. Youngerman-Reynolds Hardwood Co.*,
    325 U.S. 419 (1945) ................................................................................................ 22

*Wilder v. United States,*
    16 Ct. Cl. 528 (1880) ............................................................................................ 13

**RULES**

RCFC 12(b)(6) ...................................................................................................................... 9

**CONSTITUTION, STATUTES, AND REGULATIONS**

5 U.S.C. § 5504(b)(1) ........................................................................................................ 22

5 U.S.C. § 5545a ................................................................................................................ 10

28 U.S.C. § 1500 ................................................................................................................ 11

29 U.S.C. § 206(a) ............................................................................................................... 5

29 U.S.C. § 206(a)(1)(c) ....................................................................................................... 2

29 U.S.C. § 207 .................................................................................................................. 22

29 U.S.C. § 207(k) ............................................................................................................... 6

29 U.S.C. § 213 ............................................................................................................. 5, 10

29 U.S.C. § 216(b) ............................................................................................. 2, 6, 20, 24

29 U.S.C. § 260 .................................................................................................................. 19

29 U.S.C. §§ 201-19 ............................................................................................................ 5

31 U.S.C. § 1341 .................................................................................................................. 5

31 U.S.C. § 1341(a)(1) .................................................................................................... 3, 13

31 U.S.C. § 1341(c)(1)(D) ..................................................................................................... 4

31 U.S.C. § 1341(c)(2) ............................................................................................... passim

31 U.S.C. § 1342 ............................................................................................................ 4, 13

31 U.S.C. § 1350 ................................................................................................ 3, 13

31 U.S.C. §§ 1341-42 ......................................................................................... 2, 5

5 C.F.R. § 551.301 ................................................................................................. 2

5 C.F.R. § 551.501(a) ........................................................................................... 23

5 C.F.R. § 551.511(a) ........................................................................................... 23

5 C.F.R. § 551.512(c) ........................................................................ 2, 12, 20, 21

29 C.F.R. § 778.106 ............................................................................................. 17

29 C.F.R. § 778.315 ............................................................................................. 21

U.S. Const., art. I, § 9 ............................................................................................ 2

## OTHER AUTHORITY

Cong. Research Serv., *Fed. Budget, Accounting, & Fin. Mgmt. Laws: Summaries of
    Selected Provisions* (1996) ...................................................................... 3

The Government Employee Fair Treatment Act of 2019,
    Pub. L. No. 116-1, 133 Stat. 3 ........................................................... passim

Further Additional Continuing Appropriations Act of 2019,
    Pub. L. No. 116-5, 133 Stat. 11 ........................................... 2, 5, 6, 19

Government Operations In The Event Of A Lapse In Appropriations, Supp. Op. O.L.C.
    (1995), 1995 WL 17216091 ...................................................................... 4

*Office of Pers. Mgmt., Guidance for Shutdown Furloughs* (Sept. 2015) ....................... 3

OPM Mem. M-18-05, Planning for Agency Ops. During a Potential Lapse in Appropriations
    (Jan. 19, 2018) ......................................................................................... 4

Thomas Nicola, Cong. Research Serv., *Background Info. on the Antideficiency Act
    & Examples of Violations* (1995) .............................................................. 3

U.S. Gov't Accountability Off., GAO-06-382SP, *Principles of Fed. Appropriations
    Law* (3d ed. 2006) ................................................................................... 3

U.S. Gov't Accountability Off., GAO-05734SP, *A Glossary of Terms Used in the Fed.
    Budget Process* 70 (2005)) ...................................................................... 16

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

PLAINTIFF NO. 1, *et al.*,     )
                           )
        Plaintiffs,     )
                           )
        v.            )         No. 19-94C
                           )    (Judge Campbell-Smith)
UNITED STATES,        )
                           )
        Defendant.    )

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss plaintiffs' fourth amended complaint because the complaint fails to state a claim upon which relief may be granted.

## STATEMENT OF THE ISSUE

Plaintiffs allege that they are federal employees who were "excepted" to perform work arising from "emergencies involving the safety of human life or the protection of property" during the lapse in appropriations that occurred between December 22, 2018, and January 25, 2019.  The Anti-Deficiency Act prohibited federal officials from compensating plaintiffs or any other federal workers during the appropriations lapse on pain of criminal penalties, including fines and imprisonment.  Congress amended the Anti-Deficiency Act to specify when and at what rate compensation should be made, directing that employees "shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse."  31 U.S.C. § 1341(c)(2); *see* Government Employee Fair

Treatment Act of 2019, Pub. L. No. 116-1, 133 Stat. 3; Further Additional Continuing

Appropriations Act, 2019, Pub. L. No. 116-5, 133 Stat. 10.

Consistent with this directive, the government paid plaintiffs for the work they performed

"at the earliest date possible after the lapse in appropriations end[ed]." *See* 31 U.S.C.

§ 1341(c)(2). Plaintiffs' suit urges that the United States is nevertheless liable for liquidated

damages under the Fair Labor Standards Act, 29 U.S.C. § 216(b), because federal officials did

not violate a criminal prohibition against providing plaintiffs with compensation on their

regularly scheduled paydays during the lapse. On this basis, plaintiffs claim that they are entitled

to liquidated damages "in the amount of their regular straight time wages, or the federal

minimum wage of $7.25 per hour, in accordance with 5 C.F.R. § 551.512(c), or the federal

minimum wage under 29 U.S.C. § 206(a)(1)(c) and 5 C.F.R. § 551.301, whichever is greater;

and for all the overtime hours they worked during the same periods for which they were not paid

on their regular pay days" pursuant to the Fair Labor Standards Act.

The question presented is whether plaintiffs have stated a claim for liquidated damages

under the Fair Labor Standards Act in light of the provisions of the Anti-Deficiency Act.

## STATEMENT OF THE CASE

### I. Statutory Background

#### A. The Anti-Deficiency Act

Congress enacted the Anti-Deficiency Act, 31 U.S.C. §§ 1341-42, to vindicate its

constitutional authority over appropriations. The Appropriations Clause provides that "No

Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."

U.S. Const., art. I, § 9, cl. 7. This clause provides a "straightforward and explicit command,"

and "means simply that no money can be paid out of the Treasury unless it has been appropriated

2

by an Act of Congress." *Office of Pers. Mgmt. (OPM) v. Richmond*, 496 U.S. 414, 424 (1990)

(quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)).  Absent some other

unrestricted source of budgetary authority, a federal agency's power to "make or authorize"

payments from the Treasury expires upon exhaustion of the relevant appropriations.  *See, e.g.*,

*Sutton v. United States*, 256 U.S. 575, 579-80 (1921); *Bradley v. United States*, 98 U.S. 104, 113-

114, 117 (1878).

Until the late nineteenth century, federal agencies often "incurred obligations in excess of

or in advance of appropriations and then returned to Congress for appropriations to cover them."

Thomas Nicola, Cong. Research Serv., *Background Info. on the Antideficiency Act & Examples

of Violations* 1 (1995); *see* U.S. GOV'T ACCOUNTABILITY OFF. (GAO), GAO-06-382SP,

*Principles of Fed. Appropriations Law* 6-34 (3d ed. 2006); Cong. Research Serv., 96-626 GOV,

*Fed. Budget, Accounting, & Fin. Mgmt. Laws: Summaries of Selected Provisions* 3 (1996).  In

1870, Congress enacted the Anti-Deficiency Act to put an end to this practice.

The Act prohibits federal officers or employees from "mak[ing] or authoriz[ing] an

expenditure or obligation exceeding an amount available in an appropriation or fund for the

expenditure or obligation."  31 U.S.C. § 1341(a)(1).  The Act separately prohibits federal officers

or employees from "accept[ing] voluntary services" and from "employ[ing] personal services

exceeding that authorized by law except for emergencies involving the safety of human life or

the protection of property."  *Id.* § 1342.

The knowing and willful violation of these prohibitions is a felony punishable by a fine

of "not more than $5,000, imprison[ment] for not more than 2 years, or both."  31 U.S.C. § 1350.

Federal employees who violate these prohibitions "shall" also "be subject to appropriate

administrative discipline including, when circumstances warrant, suspension from duty without pay or removal from office." *Id.* § 1349(a).

The Anti-Deficiency Act substantially restricts the federal government's operations in the event of a lapse of appropriations.  In the absence of an appropriation that funds their pay, federal employees are generally prohibited from working, even on a voluntary basis.  31 U.S.C. § 1342.  This prohibition is subject to narrow exceptions, including "emergencies involving the safety of human life or the protection of property."  *Id.*  Federal employees who perform such work are considered "excepted" employees.  *See OPM*, *Guidance for Shutdown Furloughs* 1 (Sept. 2015) (stating that the term "excepted" refers to "employees who are funded through annual appropriations who are nonetheless excepted from the furlough because they are performing work that, by law, may continue to be performed during a lapse in appropriations."); 31 U.S.C. § 1341(c)(1)(D) (defining "excepted employee").[1]

The terms of the Anti-Deficiency Act establish that excepted employees cannot be paid for their work while the lapse in appropriations persists.  Thus, "once an appropriation is exhausted, the making of any further payments, apart from using expired balances to liquidate or

---

[1] To help agencies determine which activities are "excepted" from the Anti-Deficiency Act, the Department of Justice (DOJ) has published several opinions on the subject. *See, e.g.*, Government Operations In The Event Of A Lapse In Appropriations, Supp. Op. O.L.C. (1995), 1995 WL 17216091.  Based on the advice contained within these DOJ opinions, the Office of Management and Budget (OMB) issues guidance to agencies advising agencies to prepare for possible lapses in appropriations and to develop "contingency plans" setting forth what agency activities will continue.  Most recently, in January 2018, OMB issued a memorandum to the heads of all agencies advising them to review their contingency plans, and to "ensure that only those activities that are 'excepted' pursuant to applicable legal requirements would continue to be performed during a lapse in the appropriation for those activities[.]"  OMB Mem. M-18-05, Planning For Agency Operations During A Potential Lapse In Appropriations, at 1 (Jan. 19, 2018).

make adjustments to valid obligations recorded against that appropriation, violates 31 U.S.C. § 1341." *Principles of Fed. Appropriations Law* at 6-41.

Congress clarified these features of the Anti-Deficiency Act by amending the Act during the most recent lapse in appropriations to specify the date on and the rate at which compensation should be made. The Government Employee Fair Treatment Act of 2019, Pub. L. No. 116-1, 133 Stat. 3, provides that "each excepted employee who is required to perform work during a . . . lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates." In the continuing resolution that ended the most recent lapse in appropriations, Congress further clarified that compensation for excepted work may only be paid after the enactment of appropriations legislation ending the lapse. *See* Further Additional Continuing Appropriations Act, 2019, Pub. L. No. 116-5, 133 Stat. 11.

As a result of these amendments, the Anti-Deficiency Act now expressly provides that "each excepted employee who is required to perform work during a covered lapse in appropriations" shall be compensated "at the employee's standard rate of pay, at the earliest day possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse." 31 U.S.C. § 1341(c)(2).

### B.     The Fair Labor Standards Act

Congress enacted the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, to establish nationally uniform minimum-wage and overtime-wage requirements for certain employees. *See* 29 U.S.C. § 213 (setting forth categories of exempted employees). The FLSA assures all non-exempted employees a minimum wage for every "workweek." 29 U.S.C. § 206(a). This minimum wage is currently set at $7.25 per hour. *Id.* The FLSA also requires

employers to compensate their employees at "one and one-half times the regular rate at which [they are] employed" if the employees' workweek exceeds a 40-hour threshold. *Id.* § 207(a)(1). The FLSA does not specify a date on which compensation must be made.[2]

Employers that violate the FLSA's minimum-wage or overtime-wage requirements are "liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). Employers may also be liable "in an additional equal amount as liquidated damages." *Id.* Even when an employer is found to have violated the FLSA, however, an award of liquidated damages is discretionary if an employer can "show[] to the satisfaction of [a] court that the act or omission giving rise" to unpaid compensation "was in good faith, and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the" FLSA. *Id.* § 260.

## II.    Factual Background

At the end of the day on December 21, 2018, the appropriations act that had been funding several federal government agencies lapsed. The lapse ended on January 25, 2019, when Congress enacted a continuing resolution restoring appropriations to the affected agencies. *See* Pub. L. No. 116-5. Agencies affected by the lapse in appropriations included, but were not limited to, the U.S. Department of Justice and sub-agencies the Bureau of Prisons, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the Federal Bureau of Investigation, and the Drug Enforcement Agency; the U.S. Department of Homeland Security and sub-agencies the Federal Emergency Management Agency, the U.S. Customs and Border Protection, the U.S. Immigration

---

[2] Certain exceptions apply to the 40-hour workweek threshold, *see, e.g.*, 29 U.S.C. § 207(k), which are not pertinent for purposes of this motion to dismiss; regardless of the number of hours required to trigger the FLSA's minimum wage or overtime wage provisions, plaintiffs' claims still fail.

and Customs Enforcement, the U.S. Secret Service, the Transportation Security Administration, and the U.S. Coast Guard; the U.S. Department of Interior and sub-agencies the National Park Service and the Bureau of Indian Affairs; the U.S. Department of Commerce and sub-agencies the National Institute of Standards and Technology, the National Weather Service, and the National Oceanic and Atmospheric Administration; the U.S. Department of Agriculture and sub-agencies the Food Safety and Inspection Service and the U.S. Forest Service; the U.S. Department of Health and Human Services and sub-agency the Indian Health Service; the U.S. Agency for Global Media and sub-agency Voice of America; and the Federal Aviation Administration.

Plaintiffs are employees of agencies affected by the lapse in appropriations.  On January 17, 2019, plaintiffs filed this FLSA collective action.  Their original complaint alleged that the federal government had required them to perform excepted work but had not paid them for that work on their regularly scheduled pay dates. Dkt. No. 1 ¶ 1.  Count one, the only count in the fourth amended complaint, alleges that the federal government's failure to pay plaintiffs FLSA straight time pay, minimum wages, and overtime wages on their regularly scheduled paydays for work performed during the recent lapse in appropriations violated the FLSA.  *See* Dkt. No. 110 (publicly filed 4th Am. Compl.) ¶¶ 15-20.  Plaintiffs seek certification of a collective action on behalf of themselves and all other similarly situated federal employees who were not paid in accordance with the FLSA for work performed during the lapse in appropriations.  *See id.* ¶ 1. They seek liquidated damages to total the amount of any FLSA straight time wages or minimum wages, whichever is greater, and overtime wages that they allege that they were entitled to receive on their regularly scheduled paydays, plus attorney fees and costs.  *Id.* ¶¶ 4, 15.

## SUMMARY OF THE ARGUMENT

It is not disputed that federal officials in plaintiffs' agencies would have violated the criminal prohibitions of the Anti-Deficiency Act if they had paid employees during the lapse in appropriations.  It is also beyond dispute that Congress amended the Anti-Deficiency Act to specifically address the date on and the rate at which employees should be paid.  The legislation provides that "each excepted employee who is required to perform work during a . . . lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates." Government Employee Fair Treatment Act of 2019, Pub. L. No. 116-1, 133 Stat. 3.

Consistent with Congress's directive, plaintiffs were paid for the work performed during the lapse at the earliest possible date after the lapse in appropriations ended.  Plaintiffs nevertheless urge that they are entitled under the FLSA to liquidated damages for straight time pay and minimum wages, whichever is greater, and overtime wages on the ground that they were not compensated on their regular pay dates.  That argument asks the Court to disregard Congress's express directives in the Anti-Deficiency Act.  The Anti-Deficiency Act and the FLSA are both federal laws.  When Congress criminalized payments during an appropriations lapse, it plainly precluded payments on the schedule plaintiffs assert is required by the FLSA. Federal officials who comply with that criminal prohibition do not violate the FLSA, and Congress did not create a scheme under which compliance with the Anti-Deficiency Act would result in additional compensation as damages to federal employees.

Plaintiffs' argument is particularly anomalous because it disregards fundamental principles of sovereign immunity that require that the scope of a waiver be stated clearly in the statutory text.  The Anti-Deficiency Act would negate any claim of an unambiguous waiver even

if the FLSA clearly provided that failure to make compensation on a regularly scheduled pay date would result in liquidated damages.  But the FLSA contains no such provision.  Several courts have implied a "prompt payment" requirement in their application of the FLSA to other employment contexts.  But a court may not imply a right to damages against the United States that appears nowhere in the statute.

This Court in *Martin v. United States* concluded that plaintiffs situated similarly to plaintiffs in this case could recover liquidated damages under the FLSA, and we respectfully disagree with that holding.  But any doubt as to the obligations imposed on the United States by Congress was removed by the 2019 legislation, which unambiguously provides that excepted employees "shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates."  That enactment specifically directs federal officials when and at what rate to make payment.  Making payment on the date Congress prescribed does not violate federal law.  And, at an absolute minimum, there is no ground for concluding that Congress unambiguously subjected the United States to damages when federal officials have acted in precisely the manner dictated by Congress itself.

## STANDARD OF REVIEW

Pursuant to RCFC 12(b)(6), a complaint that "fail[s] to state a claim upon which relief can be granted" shall be dismissed.  To survive dismissal under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* A complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

**The Federal Government Fully Complied With Its Statutory Payment Obligations**

### A.     The Government Paid Plaintiffs In Accordance With Its Anti-Deficiency Act Obligations

The Anti-Deficiency Act provides that "each excepted employee who is required to perform work during a . . . lapse in appropriations shall be paid for such work, at the employee's standard rate of pay." 31 U.S.C. § 1341(c)(2). The Act also makes clear when such payment shall be made. Federal officials may not compensate employees during a lapse in appropriations and are subject to criminal prosecution if they do so. *Id.* §§ 1341(a), 1350. Congress has provided, instead, that the government must compensate employees "at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse." *See id.* § 1341(c)(2).

Plaintiffs are federal employees who performed excepted work during the most recent lapse in appropriations.[3] They do not dispute that federal officials were statutorily barred from

---

[3] Some of the named plaintiffs appear to be investigators or otherwise in intelligence-related occupations who are excluded from the FLSA. *See, e.g.,* 4th Am. Compl. ¶ 5. To the extent that plaintiffs (1) claim any FLSA violation for failing to pay FLSA minimum wages or overtime wages to FLSA-exempt employees, or (2) welcome FLSA-exempt employees to join their collective, those claims must be dismissed. *See, e.g.,* 5 U.S.C. § 5545a (explaining that criminal investigators are exempted from the FLSA pursuant to 29 U.S.C. § 213(a)(16)); *Jones v. United States*, 88 Fed. Cl. 789, 792 (2009) (holding that the Transportation Security Administration is exempt from FLSA overtime compensation requirements for airport security screeners). In

compensating them for that work while the lapse in appropriations persisted.  Plaintiffs also do not dispute that, once appropriations were restored pursuant to "the enactment of [an] appropriations Act[] ending the lapse," the government fully compensated plaintiffs "at the earliest date possible . . . , regardless of scheduled pay dates."[4]  *See* 31 U.S.C. § 1341(c)(2). Because the government fully complied with its statutory obligations to plaintiffs, the fourth amended complaint should be dismissed.

### B.    The Government Does Not Violate The FLSA By Complying With The Anti-Deficiency Act

In the face of unambiguous legislation and the government's compliance with Congress's dictates, plaintiffs nevertheless urge that they are entitled to liquidated damages equal to the amount that they already received for overtime wages and for straight time wages or minimum

---

addition, three cases based upon the same set of operative facts as at issue in this case were filed in the United States District Court for the District of Columbia, two of which were recently dismissed by the court: (1) *National Treasury Employees Union v. United States* (*NTEU*), No. 19-cv-50 (D.D.C. Jan. 9, 2019); and (2) *Hardy v. United States*, No. 19-cv-51 (D.D.C. Jan. 9, 2019).  On March 16, 2020, the district court cases were dismissed for lack of jurisdiction due to mootness, in a combined decision.  *See NTEU v. United States*, No. 19-50, 2020 WL 1245048, at *7 (D.D.C. Mar. 16, 2020).  Because both district court cases raised claims regarding payment of wages to "excepted" employees during the lapse in appropriations and address the application of the Anti-Deficiency Act, they are thus based upon the same operative facts as this case. *Compare, e.g., NTEU*, No. 19-cv-50, Dkt. No. 1 ¶¶ 4, 7-8 *and Hardy*, No. 19-cv-51, Dkt. No 1 *with* 4th Am. Compl. ¶¶ 1, 6.  Moreover, to the extent that plaintiffs in either of the district court cases overlap with the proposed collective in this case, *i.e.* FLSA non-exempt, "excepted" federal employees who were not paid on their regularly scheduled payday during the lapse in appropriations, the Court is barred under 28 U.S.C. § 1500 from considering those plaintiffs' claims in this case.  28 U.S.C. § 1500; *see Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1170 (Fed. Cir. 2011).

[4] Although plaintiffs appear to assert that they have not received back pay, *see, e.g.,* 4th Am. Compl. ¶ 2, that claim for relief is now moot because plaintiffs have been paid their full wages, including their overtime wages and minimum wages, due for their work performed during the lapse in appropriations.

wages, whichever is greater.  Plaintiffs seek to derive this entitlement from the FLSA's

provisions for minimum wages and overtime pay, as well as 5 C.F.R. § 551.512(c), which

provides that "[a]n employee has been paid in compliance with the overtime pay provisions of

this subpart only if the employee has received pay at a rate at least equal to the employee's

straight time rate of pay for all nonovertime hours of work in the workweek."  Plaintiffs'

argument relies on case law involving employers other than the federal government, in which the

only relevant federal statute was the FLSA.  The reasoning of those cases cannot be imported

into this case, when the Court is required to apply the Anti-Deficiency Act as well as the FLSA,

and to do so consistent with principles of sovereign immunity.  Further, while the FLSA

generally establishes minimum wages and hours of work, the Government Employee Fair

Treatment Act is clear and specific to the situation at hand:  payment of wages cannot be made

until after appropriations acts are enacted and must be made at the employee's standard rate of

pay and at the earliest date possible after the lapse ends.[5]  Canons of statutory interpretation

dictate that the specific governs the general.  *RadLAX Gateway Hotel, LLC v. Amalgamated

Bank*, 132 S. Ct. 2065, 2071 (2012).

 **1.**  The Court must, of course, construe the Anti-Deficiency Act as well as the FLSA.

Indeed, Federal Circuit precedent recognizes that a congressional payment instruction to an

agency must be read in light of the Anti-Deficiency Act.  *See Highland Falls-Fort Montgomery

Cent. Sch. Dist. v. United States*, 48 F.3d 1166, 1171 (Fed. Cir. 1995).  In *Highland Falls*,

appropriations were insufficient to provide plaintiff school districts with the full amounts to

which they were entitled under permanent legislation.  The Federal Circuit rejected the claim for

---

[5] The only court to reference the Government Employee Fair Treatment Act is the District
Court for the District of Columbia in the combined *NTEU* and *Hardy* decision.  *See NTEU*, 2020
WL 1245048, at *2 n. 5.

damages, reasoning that, by making *pro rata* reductions in the amounts to which school districts were entitled, the Secretary of Education had properly harmonized the requirements of the substantive statute, the appropriations statutes, and the requirements of the Anti-Deficiency Act. *Id.*

Harmonizing the FLSA and Anti-Deficiency Act in this case leaves no doubt that plaintiffs were entitled to receive compensation on the date specifically prescribed by Congress and not on a date that courts have implied in interpreting the FLSA.

The Anti-Deficiency Act prohibits federal officers and employees from "mak[ing] or authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation," 31 U.S.C. § 1341(a)(1), and makes a knowing and willful violation a felony punishable by a fine of "not more than $5,000, imprison[ment] for not more than 2 years, or both." 31 U.S.C. § 1350. Since its enactment in 1870, the Act has controlled "in every possible way the expenditures and expenses and liabilities of the government." *Wilder's Case*, 16 Ct. Cl. 528, 543 (1880). And under the Act, the government may require employees to perform work arising from "emergencies involving the safety of human life or the protection of property" in the absence of a congressional appropriation, but cannot make payments for that work unless and until Congress provides the necessary appropriation. *See* 31 U.S.C. § 1342. Both the criminal penalties and the "emergency" exception to the prohibition against voluntary services provided under the Anti-Deficiency Act had been in place over thirty years by the time Congress enacted the FLSA in 1938, and for nearly seventy years by the time Congress extended the FLSA's wage provisions to federal employees in 1974. *See* Act of Mar. 3, 1905, ch. 1484, § 4, 33 Stat. 1257 (codified, as amended, at 31 U.S.C. §§ 1342, 1350).

Plaintiffs' contrary argument rests on the premise that, in enacting the FLSA, Congress altered the application of the Anti-Deficiency Act to payments to federal employees.  In plaintiffs' view, the FLSA directs federal officials to make payments on excepted employees' regularly scheduled pay dates despite the absence of an appropriation and despite the possibility of criminal penalties for officials who would make those payments—and then deems the officials' adherence to that criminal prohibition a breach of the government's FLSA obligations. Plaintiffs' premise and reasoning are flawed.  When Congress enacted the FLSA and subsequently made it applicable to the federal government, Congress gave no indication that it was altering the fundamental and constitutionally based principles of the Anti-Deficiency Act that no funds could be expended in the absence of appropriations.  More specifically, there is no indication that, in making the FLSA applicable to the federal government, Congress was creating an exception to the Anti-Deficiency Act.  Moreover, subsequent to the FLSA becoming applicable to the federal government, Congress amended the Anti-Deficiency Act to clarify when and at what rate government employees who work during a lapse in appropriations should be paid.  In these circumstances, the Anti-Deficiency Act has primacy.

As this lawsuit illustrates, plaintiffs' interpretation of the FLSA would mean that federal employees must not only receive their compensation when a lapse in appropriations ends, but also must receive liquidated damages equal to the amount of their overtime wages and minimum wages.  No authority and nothing in common sense supports that contention, which cannot be reconciled with the obligation of courts to reconcile payment instructions to agencies in light of the government's Anti-Deficiency Act obligations.  *See Highland Falls*, 48 F.3d at 1171.  The Court should decline plaintiffs' invitation to interpret the FLSA in a manner that would undermine the Anti-Deficiency Act and the Appropriations Clause's "fundamental and

comprehensive purpose": "to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." *Richmond*, 496 U.S. at 427-28.

**2.** Plaintiffs' fourth amended complaint would fail to state a claim even apart from the considerations of sovereign immunity that must guide a court's inquiry into the availability of damages against the United States. But those considerations independently confirm that plaintiffs' fourth amended complaint must be dismissed. It is axiomatic that "when it comes to an award of money damages, sovereign immunity places the federal government on an entirely different footing than private parties." *Lane v. Pena*, 518 U.S. 187, 196 (1996). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied," and, as particularly relevant to this case, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* at 192 (internal citations omitted).

It is thus not sufficient to note that the FLSA contains a waiver of immunity. It is also necessary to determine whether Congress has waived immunity for the liquidated damages that plaintiffs seek. *See Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1319 (2020). In undertaking that inquiry, the Court is guided by the Supreme Court's admonition that "[f]or the same reason that we refuse to enforce a waiver that is not unambiguously expressed in the statute, we also construe any ambiguities in the scope of a waiver in favor of the sovereign." *FAA v. Cooper*, 566 U.S. 284, 291 (2012). As the Supreme Court emphasized in *Cooper*, "the scope of Congress' waiver [must] be clearly discernable from the statutory text in light of

traditional interpretive tools.  If it is not, then we take the interpretation most favorable to the Government." *Id.*

In *Maine Community Health Options v. United States*, the Supreme Court recently discussed the interplay between insufficient appropriations and the Anti-Deficiency Act.  First, the Court explained that, particularly in the context of the government, "[i]ncurring an obligation, of course, is different from paying one." *Maine Cmty. Health Options*, 140 S. Ct. at 1319.  That is because "[n]either the Appropriations Clause nor the Anti-Deficiency Act addresses whether Congress itself can create or incur an obligation directly by statute.  Rather, both provisions constrain how federal employees and officers may make or authorize payments without appropriations." *Id.* at 1321.

Second, the Court held that the government incurred an obligation under the now-expired Risk-Corridors statute to pay participating insurers the full amount calculated by the statutory formula because "Congress can create an obligation directly through statutory language." *Id.* at 1320.  The Court stated that an "'obligation' is a 'definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received, or a legal duty . . . that could mature into a legal liability by virtue of actions on the part of the other party beyond the control of the United States.'" *Id.* at 1319 (quoting U.S. Gov't Accountability Office, GAO-05734SP, *A Glossary of Terms Used in the Fed. Budget Process* 70 (2005)).  The Risk-Corridors statute "imposed a legal duty of the United States that could mature into a legal liability through the insurers' actions—namely, their participating in the healthcare exchanges." *Id.* at 1320.  That conclusion flowed from the statute's "express terms and context," which imposed an obligation by using the mandatory term "shall" on three separate occasions. *Id.*  For the reasons discussed above, because of the clear command of the Anti-Deficiency Act,

plaintiffs' argument would be untenable even if the FLSA unambiguously provided that an employer would be liable for liquidated damages whenever compensation was delayed beyond a regularly scheduled pay date.  But the FLSA contains no such provision; it does not require that employees be paid on their regularly scheduled pay date or make damages available when compensation is not received on a pay date.  As *Maine Community* emphasizes, statutory language determines the scope and nature of the government's liability.  And although the government has an obligation under the FLSA to pay employees, "[i]ncurring an obligation, of course, is different from paying one."  *Maine Cmty. Health Options*, 140 S. Ct. at 1319.  The FLSA's statutory language does not impose an "obligation" on the Government to pay employees on their regularly scheduled paydays.  To the contrary, the Anti-Deficiency Act, as amended, explicitly obligated the government to pay federal employees "at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse."  31 U.S.C. § 1341(c)(2).

As the Court is aware, several courts of appeals have implied a "prompt payment" requirement, while also recognizing that the rule is not inflexible.  *See, e.g.*, *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55-56 (2d Cir. 1998); *Calderon v. Witvoet*, 999 F.2d 1101, 1108 (7th Cir. 1993); *see also* 29 C.F.R. § 778.106.  Whatever the merit of those decisions, a court has no authority to infer a waiver of federal sovereign immunity that is entirely absent from the statutory text—much less do so in the face of a statute that criminalizes the payments that plaintiffs insist were required by law.  *See Erickson v. U.S. Postal Serv.*, 759 F.3d 1341, 1345 (Fed. Cir. 2014) ("A waiver of sovereign immunity 'must be unequivocally expressed in statutory text,' and '[a]ny ambiguities in the statutory language are to be construed in favor of immunity'") (quoting *Cooper,* 566 U.S. at 290) (quotation simplified); *see also Cloer v. Sec'y of*

17

*Health & Human Servs.,* 675 F.3d 1358, 1368 (Fed. Cir. 2012) (same), *aff'd sub nom. Sebelius v. Cloer,* 569 U.S. 369 (2013).

As the Court is also aware, the Ninth Circuit in *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993), took a rigid view of the implied "prompt payment" requirement in the context of a budget impasse that delayed payment to California state employees. Even assuming that the decision was correct, it has no bearing on the analysis in this case. The analysis in *Biggs* involved the application of only one federal statute, the FLSA. The Ninth Circuit had no occasion to interpret the FLSA in conjunction with a second federal statute that specifically addresses the timing of compensation. The Ninth Circuit similarly had no occasion to consider whether Congress, in enacting the FLSA, unambiguously subjected the United States to damages when payments during an appropriations lapse are barred by the Anti-Deficiency Act.

This Court in *Martin* concluded that plaintiffs similarly situated to plaintiffs in this case had stated a claim for liquidated damages, and, as noted, we respectfully disagree with that holding. Since this Court's decision, however, Congress has specifically addressed the timing of the government's obligation to provide compensation. As discussed, the Government Employee Fair Treatment Act of 2019 provides that "each excepted employee who is required to perform work during a . . . lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates." Pub. L. No. 116-1, 133 Stat. 3. Congress has thus spoken directly to the question of when compensation should be paid. There can be no basis for inferring that compensation made in accordance with that explicit directive subjects the United States to liquidated damages.

18

### C.      Even Assuming That Plaintiffs Have A Viable Claim, An Award of Relief Would Not Constitute An Act Of Sound Discretion Under 29 U.S.C. § 260

At an absolute minimum, the conduct of government officials during the lapse in appropriations falls within the scope of 29 U.S.C. § 260, which authorizes a court to award no damages or reduced damages when an employer demonstrates that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938."

This Court reached a different conclusion in *Martin,* and we respectfully disagree with that ruling.  In this case, however, Congress explicitly instructed federal officials as to the correct date on which to pay compensation, and those officials had every objective and subjective reason to believe that they were complying with federal law.  *See* Pub. L. No. 116-1, 133 Stat. 3; *see also* Pub. L. No. 116-5, 133 Stat. 11.

Indeed, we respectfully urge that this was the case even before the 2019 amendment to the Anti-Deficiency Act.  This Court stated in *Martin* that the government could show good faith only if it took "active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them."  *Martin v. United States*, 130 Fed. Cl. 578, 585 (2017) (citation omitted).  But whatever the dictates of the FLSA might be, federal officials knew that they could be imprisoned for making compensation.  They could legally take no steps to comply with a dictate that required payment during a lapse of appropriations.  It is difficult to posit a case in which an employer has better reason to believe it is complying with federal law and in which providing earlier compensation is legally impossible.

**D.     Plaintiffs' Claim For Liquidated Damages For Straight Time Pay Must Be Dismissed Because Liquidated Damages Apply To Only Awards Of FLSA Overtime And Minimum Wages**

With misplaced reliance upon 5 C.F.R. § 551.512(c), plaintiffs seek FLSA liquidated damages in an amount "equal to the minimum wages, or straight time wages, whichever is greater," as well as liquidated damages for overtime compensation.  4th Am. Compl. ¶ 4, "Wherefore" ¶ (c).  If the Court were to determine that liquidated damages should ultimately be awarded in this case, that award would not apply to "straight time wages."  Liquidated damages under the FLSA apply to overtime and minimum wages only.  An employee's "straight time rate of pay" is relevant for only purposes of *calculating* overtime compensation under the FLSA. Straight time compensation is not subject to liquidated damages, and plaintiffs' claim for liquidated damages for straight time pay must be dismissed.

The term "straight time pay" does not appear in the FLSA's text.  The Act's plain statutory text is clear:  if an employer violates the minimum or overtime wage provisions of the Act, an employer shall be liable to the employee in the amount of his or her *unpaid minimum wages* or *unpaid overtime compensation*, and in an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).  To the extent plaintiffs can state a cognizable claim under the FLSA for "straight time wages,"[6] straight time compensation is not subject to liquidated damages.  *See Koelker v. Mayor & City Council of Cumberland (Maryland)*, 599 F. Supp. 2d

_____

[6] Claims for "straight time pay" under the FLSA are uncommon, and courts disagree about the viability of such claims.  *See, e.g., Monahan v. Cty. of Chesterfield, Va.*, 95 F.3d 1263 (4th Cir. 1996) (implying that, in workweeks when an employee has worked overtime hours, the employee can state a claim for straight time compensation under the FLSA for hours worked "in the gap" between the employee's normal schedule and overtime threshold); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) (disagreeing with the Fourth Circuit's decision in *Monahan*).  The viability of these "gap" claims aside, this is not a "gap" claim case, and the United States has not identified any case when the court applied liquidated damages to straight time wages.

624, 638 (D. Md. 2009) ("Even if liquidated damages were warranted in this case, liquidated damages would apply only to the award of FLSA overtime; the straight time compensation awarded for gap hours is not subject to liquidated damages.").

The FLSA's implementing regulations explain how to calculate overtime compensation. Section 551.512(a), title 5, Code of Federal Regulations, provides that an employee's "overtime entitlement" includes "(1) the straight time rate of pay times all overtime hours worked; plus (2) one-half times the employee's hourly regular rate of pay times all overtime hours worked." "Straight time rate of pay" is

> equal to the employee's rate of pay for his or her position (exclusive of any premiums, differentials, or cash awards or bonuses) except for an employee who is authorized annual premium pay under § 550.141 or § 550.151 of this chapter. For an employee who is authorized annual premium pay, straight time rate of pay is equal to basic pay plus annual premium pay divided by the hours for which the basic pay plus annual premium pay are intended.

§ 551.512(b). An employee has been paid in compliance with the FLSA's overtime pay provisions "only if the employee has received pay at a rate at least equal to the employee's straight time rate of pay for all *nonovertime hours* of work in the workweek." 5 C.F.R. § 551.512(c) (emphasis added).

Plaintiffs interpret § 551.512 as providing for a substantive right to liquidated damages equal to an employee's "straight time rate of pay," in addition to liquidated damages for overtime compensation. Plaintiffs are incorrect, and they misunderstand the import of § 551.512. Section 551.512 is merely "a statement of the arithmetic processes to go through to ensure that an employee is paid the one and one-half times regular rate for overtime that the worker is entitled to under §§ 551.501 or 551.541 and FLSA § 7." *Brooks v. Weinberger*, 730 F. Supp. 1132, 1138 (D.D.C. 1989). In other words, an employee's "straight time rate of pay" is used to calculate an

employee's overtime compensation.  The result of that calculation—an employee's overtime compensation—is then potentially subject to liquidated damages.

The Office of Personnel Management has set forth the following overtime calculation example on its website, representing an employee who worked 40 hours of night work, 12 overtime hours, and 8 premium pay hours:

> **Annual Basic Pay:** $42,053
>
> **Hourly Rate of Basic Pay (Straight Time Rate of Pay):**[7] $42,053 /
>     2,087 hours[8] = $20.15
>
> **Total Remuneration:** Basic Pay (40 hours). $20.15 x 40 hours = $806.00
>
> **Night Pay (40 hours):** $20.15 x .10 = $2.02[9]; $2.02 x 40 hours = $80.80
>
> **Premium Pay:** $20.15 x .25[10] = $5.04; $5.04 x 8 hours = $40.32
>
> **Straight Time Pay:** $20.15 x 12 hours = $241.80
>
> **Total Remuneration:** $1,168.92 ($806 + $80.80 + $40.32 + $241.80)[11]

---

[7] Basic pay and straight time mean different things.  But in this example, hourly rate of basic pay and straight time rate of pay happen to be the same.  *See, e.g.*, *Brooks*, 730 F. Supp. at 1135 n. 6 (explaining the difference between regular rate of pay, hourly rate of basic pay, and straight time rate of pay).

[8] Pursuant to 5 U.S.C. § 5504(b)(1), hourly rates are derived by dividing annual salary by 2,087 hours. This yields a basic rate of pay.  *See Abreu v. United States*, 948 F.2d 1229, 1232 (Fed. Cir. 1991).

[9] Some employees earn an add-on of 10 percent for each hour worked at night.  *See Brooks*, 730 F. Supp. at 1134.

[10] Likewise, some employees earn a 25 percent premium for Sunday work.  *See Brooks*, 730 F. Supp. at 1134.

[11] The FLSA sets the maximum regular workweek at 40 hours and entitles a nonexempt employee to overtime compensation equal to one and one-half times the employee's "regular rate" of pay for any hours worked beyond 40.  *See* 29 U.S.C. § 207.  An employee's "regular rate" of pay is equal to the employee's "hourly regular rate" of pay for "the normal, non-overtime workweek for which he is employed."  *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)*; see Alamo v. United States*, 850 F.3d 1349, 1351 (Fed. Cir.

**Hourly Regular Rate of Pay:** $1,168.92 / 52 hours = $22.48

**FLSA Overtime Pay**: $376.68

- Straight Time Rate of Pay x All Overtime Hours Worked: $241.80

- One-half x Hourly Regular Rate of Pay x All Overtime Hours Worked:
  - 0.5 x $22.48 = $11.24; $11.24 x 12 hours = $134.88

- $241.80 + $134.88 = $376.68[12]

As this example demonstrates, straight time pay is calculated and used for only purposes of calculating overtime compensation.  Section 551.512(a) is a mathematical equation for calculating overtime compensation, and § 551.512(c) codifies a common-sense order of precedence when calculating and paying an employee's overtime compensation.  Indeed, it makes sense that "proper overtime compensation cannot be deemed paid unless and until the employee has been compensated at the regular rate of pay for the first forty hours worked." *Platek v. Duquesne Club*, 961 F. Supp. 835 (W.D. Pa. 1995); *see Barvinchak v. Indiana Reg'l Med. Ctr.,* No. 06-69, 2007 WL 2903911, at *5 (W.D. Pa. Sept. 28, 2007) ("'the overtime rate can hardly be said to be paid until the nonovertime rate has been paid.'" (quoting *Hayes v. Bill Haley & His Comets, Inc*., 274 F. Supp. 34 (E.D. Pa. 1967))).

The Department of Labor also views overtime pay as "extra compensation" in addition to, and separate from, straight time compensation.  *See* 29 C.F.R. § 778.315 ("This extra

---

2017); *see also* 5 C.F.R. § 551.501(a) ("An agency shall compensate an employee who is not exempt . . . for all hours of work in excess of 8 in a day or 40 in a workweek at a rate equal to one and one-half times the employee's hourly regular rate of pay.").  "An employee's 'hourly regular rate' is computed by dividing the total remuneration paid to an employee in the workweek by the total number of hours of work in the workweek for which such compensation was paid."  5 C.F.R. § 551.511(a).  "Total remuneration" includes "all remuneration for employment paid to, or on behalf of an employee" with certain exceptions.  *Id.* § 551.511(b).

[12] OPM.GOV, PAY & LEAVE, FACT SHEET: HOW TO COMPUTE FLSA OVERTIME PAY, *available at* https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/how-to-compute-flsa-overtime-pay/ (last visited Aug. 28, 2019).

compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid.").

Pursuant to the FLSA's statutory text, liquidated damages apply to unpaid minimum and overtime compensation.  29 U.S.C. § 216(b).  Section 551.512 does not create a separate, substantive right to liquidated damages for straight time pay.  Interpreting § 551.512(a) to create a right to liquidated damages for straight time wages—in addition to minimum and overtime wages—would be contrary to the FLSA's clear statutory text and therefore invalid.

## <u>CONCLUSION</u>

For these reasons, the United States respectfully requests that the Court dismiss plaintiffs' fourth amended complaint because the complaint fails to state a claim upon which relief may be granted.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

/s/ Erin K. Murdock-Park
ERIN K. MURDOCK-PARK
ANN C. MOTTO
VIJAYA S. SURAMPUDI
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 616-3753
Fax: (202) 514-8624

Dated: June 4, 2020                          Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 4th day of June, 2020, a copy of the foregoing

"DEFENDANT'S MOTION TO DISMISS" was filed electronically.  This filing was served

electronically to all parties by virtue of the court's electronic filing system.

<u>/s/ Erin K. Murdock-Park</u>
ERIN K. MURDOCK-PARK

26